And we'll begin with Adam Ponceo. Sorry if I don't pronounce names right. May it please the court, my name is Adam Ponceo. I represent Ms. Appellant Lucy Abajian-Salon. For purposes of today's argument, we look at two things. One, whether if McDonnell-Douglas does apply, the appellant met her burden, which we contend she did. And the second question is whether or not McDonnell-Douglas, based on the recent Ames opinion and the prior Hiddle opinion, should even apply at all in the summary judgment context. However, regardless of what standard applies, we argue that we met our Rule 56 burden in establishing that there is a material question of fact which should be resolved by the jury in this case, particularly as expressed in the Supreme Court's opinion of Tolan v. Cotton, which addressed one of this court's prior rulings. We've established that, first of all, that according to Brady and other cases, the first element of whether there is a prima facie case does not need to be met in this context. However, we have established that she has met her burden as to race, national origin, and sex. We believe that Appellee's argument with regard to the age discrimination claim is correct in that that should not be addressed in this case. However, we have met the race, national origin, and sex claim with regard to the basis of the discrimination against Ms. Abidjan-Salam. Second, we argue that pretext, at least according to the opinion set out by Judge Thomas and Gorsuch in the Hiddle case, should not be an issue in today's argument. However, regardless, we argue that we have met our burden to show that there is a material question of fact with regard to pretext and the city's position that Ms. Abidjan-Salam was properly terminated. We've established that there was no proper investigation. And that's a disputed fact based on the testimony of Internal Affairs Sergeant Investigator Michalik, who says there was not a proper investigation. And under the circumstances, as we've established in our brief, there wouldn't even have been enough support for a claim of criminal mischief under the city's own policies. What is clear is that the city failed to follow its own policies with regard to investigation, with regard to termination. And even if the chief had the ability to terminate an employee, particularly a police officer who is a probationary officer within her first year of service, that that basis does not obviate or disallow, or rather allow, discrimination based on race, national origin, or sex. Just as a point of clarification, Mr. Ponceal, did your client assert a 1981 claim at the district court below? Yes. Are you appealing the district court's decision on that claim here? Yes, Judge. So our position is that the same facts and the same considerations that go into race also apply to the national origin under 1981. And that's a case that I argued last year, the Lawrence Decay case versus Columbia Hospital, where the court said it's the same factors, the same evidence as a Title VII race case. Those same factors apply to a 1981 claim. Where is that argument in your brief? I don't think I set it out clearly, Your Honor, but that is set out in our brief and I can find that for you. Same question as far as your Texas Labor Code claim. I know that you did assert it at the district court level, but I did not see that in your brief either. Here's the problem with the Texas Labor Code claims. As the court may be aware, under the Royal Cannon case set out at the Texas Supreme Court this past year, the Royal Cannon case says if the court were to dismiss the federal claims, then it has no ability to decide, has no jurisdiction to decide the Texas Labor Code claims. However, assuming the court disregards that finding, saying no, if we were to dismiss the federal claims, we have no jurisdiction over the Texas Labor Code claims and therefore should not decide those, the court has also decided that it's the better practice in the Fifth Circuit not to address the Texas Labor Code claims once the court determines that there is no jurisdiction or rather that there is no error as to the federal claims. However, they did raise the issue of whether or not that was administratively reviewed. We contend it was, but I must say that we did not address it in the brief. So. And I understand that her national origin claim is Lebanon, but what is she claiming her race is? She's Lebanese, Judge. She's. OK, but is that a race that's different from being white? I believe it is, Judge. Well, it depends on what your argument is as to what is white. For example, in the Ames case versus Ohio, they said that there is and that it doesn't matter what your race is. When they remanded back to the Sixth Circuit to determine, they disregarded their business practices argument and said it applies either way. Discrimination applies whether you're white or a majority or whether you're a minority. And said the same standards apply. And regardless. I'm not arguing about that. I'm just trying to understand the race she's contending. She. We specifically set out that she's Lebanese and was born in Lebanon. That's a national origin. I'm just trying to understand whether that is in the race arena. Do you have a case on that? No, I do have. I don't have a case on that, but I'll be glad to supplement in terms of. Couldn't you have a nation with multiple races or ethnicities in the nation itself? I'm sorry, Your Honor. There could be multiple ethnicities in. There could. And that's what was addressed in the Ames dissent by Thomas. He says, we've become a culture of multi-ethnic ethnicities. So therefore, there shouldn't be a deviation with regard to majority versus minority or a different race. That the same standards would apply. So he sets out arguments with regard to multicultural ethnicities in his dissenting opinion in Ames where the court said, today, we're not addressing whether McDonald's. My point is simpler than that. You could have someone from Lebanon who would be considered white, right? You could, but the issue is national origin for one. National origin is a different arena. And again, I'm respectful of all of it. So please don't misunderstand me. I'm just trying to make sure I'm looking at each of the items. I'm sorry if I'm arresting you. Right, Judge. And that's a question for the court. I don't believe I set out a specific case saying, race would also encompass whether you were born in other countries and whether you differ yourself from what would be the majority in the United States. So. Isn't the relevant question whether the comparators were of the same or different race than Ms. Abaja and Salon? That's one of the questions, Your Honor. But we say that comparators is also not a proper factor under the law. So what we do is we go to what's addressed in Ames and what's addressed in Hittle is, what is the textual requirement of Title VII? And Title VII does not itself say that pretext is an issue, nor does it say that comparators are an issue. And that's what I raised in my reply brief is, should this court now address whether or not McDonnell Douglas even applies to a Rule 56 motion for summary judgment, as in this case? Do the standards even apply? Because it was a judge-created test that was created when there was no right to trial by jury. Why does it matter here? The district court assumed, the district court questioned whether your client had established a prima facie case, but assumed, gave you the benefit of the doubt, and assumed that she had and decided it at the pretext stage, not at the prima facie. So why does the issue regarding McDonnell Douglas affect this case at all? Because pretext is what most cases dealing with summary judgment evaluate when they evaluate under the McDonnell Douglas case. And as we set out in our reply brief, pretext should not even be a factor. The real factor in a motion for summary judgment case on a Rule 56 is whether we've created a question of fact, which we have. We created a question of fact by their own testimony, by the chief's testimony, saying there may have been a mistake because there was not a proper investigation. And investigating internal affairs, Sergeant McKalick said, there wouldn't even have been criminal mischief, which was the basis for Chief McManus's termination of Miss Abhijan Salam. So if pretext isn't an issue because McDonnell Douglas shouldn't even apply in a Rule 56 context, then it should not be addressed. The real issue is whether there is a question of fact that jurors should decide in this case. However, what we say is we say based on the comparator argument that there is a question of fact on pretext that it's a false reason. We've also established that because they didn't properly investigate it, because there was no basis for criminal mischief finding or allegation, that that also establishes a question of pretext as to whether or not that should have even been a basis for her termination, which is what the basis was for in Chief McManus's termination letter. So we argue they haven't even met that standard. There is a material question of fact with regard to pretext or the basis of their termination as a legitimate, non-discriminatory reason. And therefore, it should be decided that it should proceed to trial by jury or remanded based on a re-evaluation of whether McDonnell Douglas even applies in this context, whether it should apply. And Justice Thomas and Gorsuch have invited courts to bring this before the court for determination. OK. Thank you, Your Honor. You've saved time for rebuttal. Yes, ma'am. And we'll now hear from Jacqueline Stroh. May it please the court. My name is Jackie Stroh, and I represent the city of San Antonio. The issue before the court today is whether it should affirm the district court's summary judgment in ruling us, excuse me, summary judgment ruling in favor of the city on all of plaintiff's discrimination claims. I think the court properly noted that the plaintiff has not briefed the Texas Labor Code issue, the age or the reason for the age discrimination issue. In fact, plaintiff concedes he has no age discrimination claim, or the race discrimination claim. I just want to talk a little bit about that one and then move on to national origin and sex under McDonnell Douglas. So the reason that the district court dismissed the race discrimination claim is twofold. First, he said under Title VII there was no exhaustion of administrative remedies. That's 100% true. And the court can look at the EEOC charge. It doesn't check race. It doesn't discuss race. It's limited to national origin, sex, and age. There's no challenge to that on appeal. She simply just discusses race in the context of Title VII. So she hasn't preserved it for this court's review. The second basis for the dismissal was under 1981. The district court held that the plaintiff did not include in her pleading factual allegations related to race. Rather, they were simply related to national origin. And so she did not state a 1981 claim based on race. Again, there's no discussion of 1981 at all in the plaintiff's brief except to state that he brought it in the district court and the district court had jurisdiction over that claim. But no assignment of error for the reasons the district court dismissed the 1981 claim. So again, that's not preserved for this court's review. With respect to the claims for national origin and sex discrimination, the plaintiff admittedly has no direct evidence of discrimination. So in this summary judgment setting, the McDonnell-Douglas burden-shifting framework absolutely applies. I honestly don't understand the argument that the court should not use McDonnell-Douglas when the court used McDonnell-Douglas in a published opinion as recently as 2025 and has consistently done so. It is the law of this circuit. It is the law of the Supreme Court. And a dissenting opinion by two justices of the Supreme Court does not change that. So the elements for the McDonnell-Douglas framework are, first, the plaintiff has to establish a prima facie case of discrimination. And in the context of a disparate treatment claim, whether it's a work rule violation or not a work rule violation, she has to show that she was treated differently from nearly identical comparators in nearly identical circumstances with respect to comparators that are outside of her protected class. She didn't do that. I'm going to talk more about that in the context of pretext because they sort of dovetail. But suffice it to say at this point that there is no evidence of comparators like that, and she cannot satisfy her prima facie case. Next, the city has the burden to articulate with some evidence a legitimate non-discriminatory reason for her termination. Again, the city absolutely did that. There is evidence in the record that she participated in a confrontation with construction workers, used her police-issued baton to admittedly knock their radio speaker off the curb. In fact, in body cam footage from the Bexar County Sheriff's Office when they interviewed her, she admitted that she broke the radio, tossed them $100 as compensation for having done so, and violated several rules contained in the San Antonio Police Department's general manual in the process. While you can look at Chief McManus's termination letter as well as his deposition testimony, I'll touch on that also in the context of pretext a little bit more. But he did not base it on the fact that the conduct had to have risen to the level of a criminal violation, but it absolutely did. There's evidence in the record that she did some damage to it. She admitted she broke it. The workers themselves testified that the speaker was worth $200. They testified that she also hit a compressor and damaged the air valve, and that it cost $400 to fix it. The Texas Penal Code defines criminal mischief to be damage in any amount of money. Less than $100 is a Class C misdemeanor. So she absolutely did commit a crime in addition to violating provisions of the SAPD general manual. So then it turns to her to establish evidence of pretext. And she doesn't talk about everything here in oral argument that is in her brief, but I want to try and address all of them so the court has a thorough understanding as to why there is zero evidence of pretext. She relies on several things. I'm going to list them out and then talk about them individually. She talks about there being an incomplete investigation, failure to follow the city's own policy with respect to investigations, changing explanations for her termination, the admission by Chief McManus that he wrongfully terminated her, that he gave a false reason for terminating her, and possibly comparators. He doesn't really brief that, but does talk about comparators in the facts. And so we addressed it, and we'll address it today out of an abundance of caution. So first, with respect to incomplete investigation, which sort of is related to this failure to follow the city's own policies, Abhijan Salon, as a probationary SAPD officer, is entitled to no investigation. The procedures, the internal affairs procedures concerning an investigation, a referral to the Complaint Action Review Board, any of that does not apply. If you look at Article 25 of the Collective Bargaining Agreement at Section 5, which is in the record and attached to the city's motion for summary judgment, it says, an officer does not become entitled to protection against discipline or discharge by the provision of the civil service law or this agreement, except upon completion of said probationary period. So none of those provisions regarding internal affairs investigations and how they have to be referred and the specific steps that have to be taken apply to her. So there was no failure to follow a policy. Moreover, while the internal affairs investigation wasn't completed per policies that apply to non-probationary officers, Sergeant McCallick conducted a very thorough investigation and relied on information from the Bexar County Sheriff's Office and the Integrity Unit of the SAPD that conducted its own criminal investigation and had just an absolute wealth of information to substantiate her violation of SAPD general manual provisions and the criminal law. She was interviewed on or asked to provide information or gave information on four separate occasions. She was interviewed by the Bexar County Sheriff's Office. They have body cam footage where she admitted she broke the radio. She was asked by the Internal Affairs Sergeant to give her version of events on an administrative complaint form. She self-reported to Sergeant Olivares that she engaged in this conduct and admittedly knocked the radio off the curb. And I'm missing one. Oh, and she was interviewed by phone by the Integrity Unit where she also admitted to paying $100 and dropping the speaker on the ground. So they absolutely had her version of events. I know there is case law from this circuit saying that where you don't even bother to get the plaintiff's version of events, that possibly could raise an issue on pretext. That's not what happened here. He looked at other body cam footage, the interview of the workers at the site. He interviewed personally the project supervisor who had talked to the workers at the site. He reviewed photographs. He attempted to call and speak with the workers themselves. Again, in addition to the body cam footage, in addition to talking to the project supervisor, he was not successful, but had more than enough information to support the reason for termination. Plaintiff quibbles with the fact that she was not propounded certain interrogatories that were prepared but not sent to her before the investigation was closed. But again, he had her version of events from multiple sources. With respect to this changing explanations, I'm not really sure what that concerns. Chief McManus's reason for the termination has been consistent from the termination letter on through his deposition. And he never said, and I want to emphasize that, he never said that he terminated her in error. I'm going to refer the court to four separate record references. I believe they're referenced in our brief, but if they're not, here they are. The record at 1113, 1139, 1145, and 1147. Consistently say it was about her actions on that day, not about the criminal case specifically. It's what she did as a member of the department, and that because of that conduct, she had no business being an SAPD officer. To the extent he's talking about this F-5 form, that's not a city form, it's a T-Col form, where he originally characterized her dismissal as a dishonorable one and then changed it to general. He explained in his deposition that's because he became aware that the construction workers themselves did not want to pursue criminal charges, and so changed it to a general category. Again, Chief McManus did not admit that the termination was wrongful. He did not give a false reason. I've explained why there's more than ample evidence that she violated the provisions and engaged in criminal conduct. And finally, with respect to the comparators, he offers evidence of three supposed comparators for the court's consideration, but none of them qualify under this court standard. So she offers two males and one female, absolutely no information on any of their national origin. At one point, she says in an affidavit that on information and belief, the female was born in the United States. But this court's president says that an affidavit stated on information and belief is no summary judgment evidence whatsoever. So there's no evidence that any of these comparators are outside of her protected category for purposes of national origin. The female is not outside of her protected category for sex discrimination. So you have no comparators for national origin. Two possible comparators for sex discrimination. With respect to those two males, only one was a probationary officer. And this court's precedent is clear that the comparators have to have nearly identical circumstances to the plaintiff to be considered viable comparators for purposes of both the prima facie case and for purposes of showing pretext. There's no violence. There's no aggressive conduct. There's no property damage. There's also no prior disciplinary history. And this is important, too. Abidjan Salon was previously reprimanded for failing to provide all medical documentation for an on-the-job injury. And even more importantly, she was previously counseled for improperly using her police-issued baton during training, continually using it as a manner of deadly force, continually striking the head and neck, even after being counseled not to do so. No one has that kind of disciplinary history and no involvement of a family member involving her daughter in there bringing a bat and her daughter unplugged the radio before she knocked it to the curb. So there's nothing in the way of comparators. But even if, under any of those factors, the court had the weakest evidence of pretext, the same actor inference applies here and precludes a reversal of the trial court summary judgment, the court's own precedent says that when there's a weak issue of pretext and the same actor inference applies, Chief McManus both hired her and fired her, that that is not enough. That weak evidence of pretext is not enough to overcome the inference and preclude a grant of summary judgment. My last issue, which I'll very briefly address with respect to this intervening authority, I've already talked about McDonnell Douglas. I know he's also cited a dissent by Justice Kavanaugh in the Brady case from the DC Circuit saying that once the city articulates a legitimate non-discriminatory reason, the prima facie requirement is no longer in play. That's not this court's precedent. The court's precedent holds exactly the opposite. The other cases he cited deals with adverse employment decision requirement, which is not an issue in this case. The application of Title VII's sex category to transgender and homosexual individuals, not an issue in this case. The heightened proof burden and whether there is one for majority group plaintiffs, not an issue in this case. And so there's no intervening precedent, no sea change of the law, or anything like that to avoid application of McDonnell Douglas. So the plaintiff has no evidence to satisfy her prima facie case, even if she did, she has no evidence of pretext, and she cannot overcome the same act of inference. So for all these reasons, the court should affirm the district court's judgment. Thank you very much. We'll now hear the rebuttal. Yes, Your Honor. With all due respect, what opposing counsel has just presented to this court is what should be jury argument because of disputed issues regarding what they contend was a legitimate, non-discriminatory reason for termination. What we saw and what we see in the record is a direct quote from Mr. Chief McManus that he had, in fact, made a mistake or would have made a mistake had he disciplined her and terminated her under the circumstances. What we also have is investigating internal affairs officer Sergeant McCallick saying, no, there was no criminal mischief. She miscites to the records with regard to what happened with the radio, which was claimed to be accidental and not part of any intentional act in this site. She cites to two prior incidents that occurred while she was in training in her original training that have no relevance to her status as a probationary officer. And we believe that we have met our standards with regard to the comparators and or that, pretextually, we have created an issue of fact that should result in this case being remanded back to the trial court for a trial on the race, national origin, and or the sex discrimination claims. OK. Thank you, Your Honor. We appreciate both sides' arguments. The case is now under submission. We have one more case.